Harry Shulak v. Commissioner.
Shulak v. Commissioner
Docket No. 6654.
United States Tax Court
1946 Tax Ct. Memo LEXIS 198; 5 T.C.M. (CCH) 328; T.C.M. (RIA) 46101; April 30, 1946
*198 Arthur A. Miller, Esq., 978 Union Commerce Bldg., Cleveland, O., and David A. Kaufman, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves income taxes for the calendar year 1941. Deficiency was determined by the Commissioner in the amount of $5,119.58. One assignment of error was abandoned by the petitioner at trial, leaving for our consideration only the question as to whether the Commissioner erred in including in the income of the petitioner all of the income of a partnership alleged to exist between the petitioner and his wife. From documentary evidence and testimony, we make the following Findings of Fact The petitioner is a resident of Toledo, Ohio. He was married about September 1935 at about 22 years of age. At that time he was selling furs from house to house. He and his wife, about the same age, have since that time resided in Toledo. At the time of her marriage, petitioner's wife received from her mother a wedding present of $1,000; also from other relatives, about $300. This money was on September 3, 1936, deposited in a savings account in a bank, in his *199 wife's name, in the amount of $1,305. On September 8, 1936, $1,180 was withdrawn. In 1936 petitioner and one David Silverman entered the business of selling furs as partners. The name of the business was Sally Furs, later, about 1937, changed to Marilyn Furs. The partnership agreement was entered into on September 9, 1936. Each partner contributed $500. It was necessary to put up another $1,000 as security for merchandise received on consignment. Petitioner had no money of his own in the bank at that time. He obtained from his wife the $1,180 withdrawn on September 8, 1936. This furnished the petitioner's capital in the partnership. The partnership business was conducted from the residence of petitioner and his wife. Silverman also lived there. Upstairs rooms were used as residence, the balance of the house for business, but in busy times furs were exhibited in petitioner's living room. His wife dusted, cooked, received customers, answered the telephone, took the cash, showed clothes to customers, washed the furs, did repair work, and otherwise assisted in the business. The business had no receptionist, telephone girl, or cashier. After a baby was born, the petitioner and his wife *200 moved to other quarters nearby, but at times she brought the baby to the place of business in a carriage, and helped as best she could. After the business started, petitioner gave his wife money from business profits during the last three months of 1936. This amounted to about $4,000 - $4,500. He though she could keep money better than he could. No strings or conditions were attached to the money given her. She deposited it in a bank. She had two bank accounts. Beginning November 16, 1937, and ending December 17, 1940, the petitioner deposited, in his own name in bank about $21,340 in a savings account. On January 1, 1940, his balance in the account was $8,460.82. On January 3, 1940, it was $12,995. His income in 1939 was about $22,000; in 1940 it was about $8,500. About January 1940 petitioner and Silverman merged the business with Globe Fur Co., wholesalers. A corporation was incorporated for $100,000 by five incorporators, including petitioner and Silverman. Each contributed $20,000, petitioner's part being about $7,500 in cash and $12,500 in assets from the Toledo store and another at Ft. Wayne. Seventy-five hundred dollars was withdrawn from petitioner's savings account on *201 January 4, 1940. The association with Globe Fur Co. proved a losing venture, and at the end of 1940 was discontinued, after considerable negotiations as to terms. The associates in the Globe Fur Co. were men older than petitioner. They put the burden on him, contrary to his expectation, and did not help run the business. By March 1940 he was trying to get out of the association, but the others would not agree. During the year the Toledo store (petitioner's old store) was moved to a location with higher rent, more furniture and fixtures, and machinery. By the end of the year the parties were arguing, and affairs were "messed up." Petitioner also decided to eliminate Silverman's investment in the Toledo business. Terms were agreed upon, on December 30, 1940, with both Globe Fur Co. and Silverman. These included the dissolution of Globe Fur Co. and the purchase from it by Harry Shulak of the Toledo store for $10,000. Petitioner lost the cash invested and received no cash in the deal with Globe Fur Co. He also obligated himself to pay Silverman $7,980 by December 31, 1940, at 6 o'clock p.m. At the last Silverman insisted on the short time limit, after earlier agreeing to let petitioner *202 have time to pay. Petitioner received only merchandise, of inferior quality, and the Toledo establishment. To make the deal, to replace this merchandice and to pay Silverman, petitioner needed cash badly. On December 31, 1940, he closed out the savings account, above referred to, by withdrawing $3,458.62. Throughout most of 1940 petitioner and has wife had wished to sever the connection with Globe Fur Co. A few days prior to the settlement with Globe Fur Co. at the end of the year, petitioner had talked to his wife. She said she had about $2,500 in bank which he could have, and that she would try to raise money from her father and mother. On December 30, 1940, petitioner's wife closed her bank account in the Detroit bank by withdrawing $2,490.58, which she turned over to him, also $1,000 obtained from her parents. These funds were used and the interests of Silverman and Globe Fur Co. in the Toledo business of "Marilyn Furs" were eliminated. About March 1941 petitioner's wife furnished another $1,500. This came from a bank account she had accumulated from her savings from household expenses. He had not known of such account. The bank account from which petitioner's wife withdrew *203 $2,490.58 had started on June 24, 1936, with a $25 deposit. The principal deposits therein were $1,500 on November 18, 1936, and $1,250 on December 26, 1936. No withdrawals were made therefrom after January 9, 1937, and no deposits were made after December 31, 1936. Sometime late in 1940 Mrs. Shulak consulted a Mr. Hoover, an elderly employee in the business, about dissolving with Globe and Silverman. She said she had a little money of her own and asked his advice about investing, as she was going to be a partner. About a week before the dissolution, petitioner's wife in a discussion with her husband said she thought it was best for him to get out; that she was glad he had decided to do so, that he did not need any partners, that she would be his partner. They discussed the matter several times before she agreed to give him the money. She told him she did not like the set-up with Globe, did not like anything about it, and talked him out of it. She said that she did not want any more trouble and that he had to take her advice, that she had some money saved up, and she wanted him to get rid of the corporation, and she wanted to be his partner, that she would give him the money, providing *204 she was his partner. When she gave him the money, they had a verbal understanding that she would become his partner. She was not considered by them as a partner prior to that time. On January 2, 1941, petitioner and his wife executed a "partnership" agreement in writing. It provided, so far as material, in effect, as follows: That Harry Shulak shall contribute to the capital of the partnership his skill, knowledge and experience and entire time and attention, and transfer to the partnership the assets of Marilyn Furs, including the assets acquired from Globe Fur Co., and Becky Shulak, his wife, shall contribute $5,000 in cash; that the trade, fixtures and stock in the store room in Toledo shall become the property of the partnership; that the partnership will assume all outstanding liabilities; that Becky Shulak shall not be required to devote any of her time or personal attention to the business; that Harry Shulak shall receive a salary of $100 a week, and his expenses in connection with the business; that all contracts shall be in the firm name, and all profits and losses shall be divided equally; that Harry Shulak shall have power to make all contracts for the business, but neither *205 partner shall assign his interest or any partnership property; that complete books of account shall be kept at the principal office, to be kept accurately by Harry Shulak, he to furnish Becky Shulak true and complete information on all things, and each partner to have free access at all times to the books; that Harry Shulak shall have charge of all finances, money and accounts, to prepare monthly statements thereof for each partner; that the moneys shall be deposited in a suitable bank in Toledo, and all debts to be paid by check to be signed by Harry Shulak and/or Becky Shulak; that the agreement shall continue until terminated by consent or by death, bankruptcy, insolvency, or disability of either party. The "partnership" still continues. The $2,490.58 which petitioner's wife contributed had been received from him in 1936. He gave her no money after 1936. They never had a joint bank account, except the partnership account. The petitioner had given his wife from sometime about 1937 an allowance for household expenses of about $75 a week, and from this she saved the $1,500 given him about March 1941. He gave her no promissory note to evidence the money he received. He has repaid *206 none of the money. She did not expect it. The allowance for household expenses continues to this time. He has paid the department store bills both before and after the formation of the partnership. After the formation of the partnership, notice thereof was given to the bank on October 24, 1941, and a card was executed evidencing her right to sign partnership checks. State and Federal agencies were notified of the partnership. This has continued from year to year. Since the formation of the "partnership" petitioner's wife has not done all of the things she formerly did about the business. She has helped almost every day, and particularly when petitioner has been away. She has greeted customers, waited on customers if the others were busy, given orders, answered the telephone, and asked for advice. She has not accompanied him on Florida vacation trips, and has seen that things were taken care of in the business and reported to him on the business while he was away. She has spent four or five hours a day, nearly every day, at the store. She was never paid for her services. Since the formation of the "partnership" and through 1944 petitioner's wife has maintained a savings account *207 of her own, upon which petitioner could not draw. She has received by credit to her account or withdrawal, 50 per cent of the partnership profits, yearly, after payment of petitioner's salary. Her part has amounted to about $30,000 - $35,000. Out of it she has paid taxes, bought bonds to the extent of about $4,000 in her own name and that of her son, bought gifts, bought a house in her name, from the business profits. She examines the books and records of the business, and her own account. In 1941, one-half of the $23,000 profit made was paid to her. In connection with formation of the partnership, petitioner consulted an accountant and attorney, who agreed with the idea of petitioner's wife that she should be a partner. Capital accounts were set up, representing the partnership interests, by the auditor and attorney. About December 24, 1943, the petitioner and his wife filed a protest against the action of the Commissioner in disregarding the partnership, which in material part states: Although the money deposited to the savings account of Becky Shulak was furnished by Harry Shulak, the money, after being deposited was unquestionably the property of Becky Shulak. On December 31, 1940, Becky *208 Shulak withdrew from her account the amount of $2,490.58. On March 29, 1941, and on May 1, 1941, Becky Shulak withdrew the total amount of $1,550.00 from her account. This money was used to acquire the net assets of The Marilyn Furs, which were owned by a corporation that dissolved during December, 1940. The net assets, excluding Goodwill, had a book value of $12,998.58. In lieu of a note or a promise to pay by Harry Shulak, Beck Shulak was credited with $5,000.00 as her investment in the new partnership, for which she was to receive one-half of the profits after a salary to Harry Shulak. If this were not done, the liability of $5,000.00 would have had to be shown as a liability, which would have affected the credit of the newly formed company. Opinion Under the facts found and set forth above, did the petitioner and his wife transact business in 1941 as a partnership? On the record before us the answer is not easily found. The facts contain not only elements examined in cases where no partnership was considered to exist, but also various elements heretofore studied in cases where the relation of partnership was upheld. We have weighed and considered carefully the divergent characteristics *209 of the association here presented. We are impressed first of all by the fact that this is not an instance where (as in such cases as an interest in a prosperous going business is given, more or less directly, to a wife. Here the petitioner's business was in a bad situation at the end of 1940. A year of association with Globe Fur Co. left him in a predicament from which he had attempted to escape during most of the year. His income had been less than half that of 1939. He was not in the position of turning to his wife an interest in the current business, but of seeking her assistance in escaping from a situation not to his liking or advantage. She did come to his assistance with money from her parents, $1,000, with $2,490.58, every cent of a bank account which she had had for more than three years, and with about $1,500, funds saved from her household account of which her husband was not aware. The respondent points out, what was admitted, that the $2,490.58 had been given to her by petitioner in the latter part of 1936. But we are not greatly impressed by that fact, for two reasons: first, she had, only a few weeks earlier in 1936, let *210 him have about $1,300 given her as wedding presents, so to that extent he was simply returning money to her; second, we do not think that the idea of origin of partnership capital with the partner to be taxed requires refusal to consider the long standing of a gift from which partnership capital is paid. The question being essentially one of good faith and reality of the partnership, it is clear that the gift of money in 1936 was not with any idea of contribution thereof to any partnership, but with true donative intent (except possibly the $1,300). Some cases have involved difficult inquiries as to whether a gift was conditioned upon formation of partnership. Here, there can be no such question, and we think it would be far fetched to view the gift in 1936 as in substance the capital contribution of the husband in 1940. The respondent suggests that the wife held as trustee. We find nothing at all to justify this view. All of the evidence is that there were no "strings" to the gift. We see no reason to ascribe unreality or sham to a partnership because a wife received a part of the capital contributed by her, from her husband more than three years before. The same logic applies to *211 the $1,500 saved, without his knowledge, from household savings. There was clearly no intent, in so saving, to contribute capital to a partnership, or to evade taxes by so doing. As to the other $1,000 which in effect completes the $5,000 recited as her contribution, there can be no question, she having raised the money from her parents. The petitioner had to have money, and have it quickly. The net assets of the Toledo store, excluding good will, were recited in the protest as of a book value of $12,998.58. Considering the unsatisfactory year with Globe Fur Co. we do not view the good will as of great importance. Regarding the Toledo store therefore as a matter of about $13,000 valuation, and considering the embarrassed position of the petitioner, it seems to us reasonable to regard $5,000 in cash, all but $1,500 at once, as no unfair contribution for the one-half interest obtained. It is plain that the wife did not merely hand over the money with no consideration of her position, though it is true that the word "gave" is loosely used. She "didn't like anything about it" - Globe Fur Co., said "he has got to take my advice", that she would "give" him the money "providing I was his *212 partner." We think we see here a wife observant of her husband's mistake in associating with the Globe Fur Co., insistent upon dissolution of that relationship, and using her position with cash to exercise some control. More clearly, we see the husband actuated by the necessity for money rather than by a view ahead toward saving income taxes. "The real purpose was that I needed the money she gave me. I absolutely had to have it." A wife may be a real partner, (February 25, 1946) and we view this as such a case. Certainly this is not a case where "no capital not available for use in the business before was brought into the business." Though her contribution of services alone would not be considered sufficient basis for partnership purposes, it may by no means be disregarded, and when we add her contribution in effect of nearly the entire original capital with which her husband started in 1936, in our view the wife made such a fair contribution to the partnership set up that we should not disregard it for tax purposes. We regard the two as really carrying on business as partners, not merely feigning that relationship. The language in the *213 protest serves to emphasize reality of the relation, rather than disprove it. Another feature of this matter tends strongly to support the petitioner's position: In a very real sense the wife was not obtaining her interest in the partnership assets and business from her husband, but from Globe Fur Co. and Silverman. The whole business belonged to Globe Fur Co. The contract which ended that arrangement required payment of $10,000 for the Toledo store, and payment to Silverman to eliminate him. To this purpose the wife contributed her money. We have held that where a wife purchases a partnership, not from her husband, but from another, the husband is not in a position of improperly dividing his income with her. (promulgated April 23, 1946). Whether we regard Shulak's wife's money as going to the elimination of Silverman or Globe Fur Co., she is essentially in the same position as the wife in the Alexander case, and we discern a real distinction from those cases where a husband deviously or directly contributes the interest sought to be ascribed to his wife. We conclude and hold that there was partnership and that one-half the net earnings *214 thereof are not taxable to the petitioner. Because of an issue abandoned by the petitioner. Decision will be entered under Rule 50.